UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GEORGE R. POWELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21-CV-2295 |
| | ) |
| SHISEIDO AMERICAS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff, George R. Powell, filed a putative class action Complaint (#1-1) in the circuit court of Vermilion County, Illinois. In the Complaint, Plaintiff alleges that Defendant, Shiseido Americas Corporation, violated sections 15(a) and 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"). 740 Ill. Comp. Stat. 14/1 et seq. Defendant removed (#1) the matter to this court on November 30, 2021.

Presently before the court are Defendant's Motion to Strike Class Allegations (#6) and Motion to Dismiss (#7). Plaintiff has filed Responses (#10, #11) to each Motion, and Defendant has filed Replies (#14, #17). The case is currently stayed pending a ruling on the outstanding motions. For the reasons set forth below, Defendant's Motion to Strike Class Allegations (#6) and Motion to Dismiss (#7) are DENIED.

## BACKGROUND

The following facts are taken from the allegations in Plaintiff's Complaint, which, for the purposes of addressing Defendant's Motion to Dismiss, the court accepts as true. See *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). Moreover, all reasonable inferences are drawn in Plaintiff's favor at this stage of the proceedings. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Likewise, "where, as here, a defendant attempts to preemptively strike class allegations on the face of the complaint prior to the plaintiff's motion for class certification and before discovery has been conducted, the court accepts the plaintiff's allegations supporting class certification as true." *Drake v. Mirand Response Sys., Inc.*, 2020 WL 4218335, at *2 (S.D. Ind. July 22, 2020).

Defendant is a global beauty supply company that, among other things, sells makeup products on various websites. Some of Defendant's websites offer a virtual try-on tool ("VTO") to consumers visiting the site. VTO is offered on at least four of Defendant's websites: bareminerals.com, narscosmetics.com, lauramercier.com, and cledepeaubeaute.com. When a consumer views a specific makeup product for which VTO is available, the websites present a button beneath the image of the product, labeled "Try On," "Try It On," or "Try Now."

When a consumer clicks one of those buttons, they are taken to the VTO page, where they can use the camera on their computer or phone to display a real-time photograph of themselves, or, depending on the specific website, upload a previously saved photograph. Once an image is displayed, VTO automatically overlays the

selected makeup product on the image of the consumer's face. The consumer has the option of downloading or being e-mailed the resulting image.

VTO "is powered by an application called 'YouCam Makeup.'" The application operates by "capturing the facial geometry of the users' photos," regardless of whether the consumer uploaded a photo or captured a live image via camera feed. The Complaint further alleges: "According to the developer of YouCam Makeup, the application uses 'proprietary AgileFace® technology to deliver ultra-accurate face tracking' and 'precise makeup product application that stays in the correct position with head movements, allowing [the user] to examine the look and see the tutorials from multiple angles.'" The YouCam Makeup application utilizes 100 points on the face for facial recognition and skin-tone matching.

The Complaint alleges that Defendant does not inform consumers using VTO that it is capturing or collecting biometric data, nor does it inform them as to the purpose or length of time for which it stores such data. The Complaint further alleges that Defendant does not make publicly available any written policy relating to biometric data. Finally, the Complaint alleges: "Upon information and belief, Defendant has not developed a written policy establishing retention schedules and guidelines for permanently destroying consumers' biometrics and does not destroy such data within the timeframes established under BIPA."

Plaintiff is "an accomplished entertainer who regularly performs in drag shows." Beginning around late-February 2021, Plaintiff visited bareminerals.com to search for makeup products. He visited the website and used VTO approximately six times. The Complaint alleges:

> "32. Each time [Plaintiff] used the bareMineral Virtual Try On tool, Defendant captured and collected his facial geometry.
>
> 33. Upon information and belief, Defendant also stored his facial geometry thereafter.

Plaintiff was never informed in writing that the scans of his facial geometry were being captured, collected, or stored. Nor was he informed as to the purpose or length of time for which the data would be collected, stored, or used. Plaintiff does not know whether Defendant has destroyed or ever will destroy the biometric data collected from him.

> In his Complaint, Plaintiff defines his proposed class as follows:
>
> All persons whose biometric identifiers were captured by Defendant through use of the Virtual Try On tool on Defendant's websites, including bareminerals.com, narscosmetics.com, lauramercier.com, and cledepeaubeaute.com, while residing in Illinois from five years preceding the date of the filing of this action to the present.

Plaintiff alleges that, upon information and belief, there would be more than 40 class members, such that individual joinder would be impractical. Plaintiff further alleges that certain questions of fact—such as those regarding Defendant's practices with respect to biometric data—and questions of law—such as whether those practices violate BIPA—predominate over any individualized questions.

Plaintiff's Complaint alleges two violations of BIPA on Defendant's part. In Count I, Plaintiff alleges that Defendant violated § 15(b) of BIPA in that it failed to inform in writing and obtain a written release from consumers prior to capturing, collecting, or storing biometric identifiers. See 740 Ill. Comp. Stat. 14/15(b). In Count II, Plaintiff alleges that Defendant violated § 15(a) of BIPA in that it possessed biometric identifiers and failed to develop and make publicly available a written policy for retention and destruction thereof. See *Id*. § 15(a).

## ANALYSIS

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 545. In ruling upon a motion to dismiss, the court must draw all reasonable inferences in favor of the plaintiff but need not accept as true any legal assertions, threadbare recitals of the elements of a cause of action, or conclusory statements. See *Iqbal*, 556 U.S. at 678.

This case is in federal district court pursuant to 28 U.S.C. § 1332(d)(2), which provides the court with original jurisdiction over class actions where there is minimal diversity and the total amount in controversy exceed $5 million. Where federal jurisdiction is based upon diversity of citizenship, the substantive rights of the parties

are governed by state law. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Illinois law governs. This court must therefore apply the law as the Supreme Court of Illinois would apply it to the issues presented. See *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 527 (7th Cir. 1998).

*BIPA*

Section 15(a) of BIPA mandates that any private entity "in possession of biometric identifiers or biometric information" develop a written policy establishing a retention and destruction schedule for that data and make said written policy available to the public. 740 Ill. Comp. Stat. 14/15(a). Section 15(b) of BIPA mandates that no private entity may "collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric identifiers or information without (1) informing the person in writing that the data is being collected or stored, (2) informing the person of the purpose and length of time for which the data will be stored, and (3) obtaining a written release from the person. *Id*. § 15(b). The definition of "biometric identifier" provided in BIPA includes "face geometry." *Id*. § 10.

BIPA does not define the terms "possession," "collect," or "capture" as used in §§ 15(a) and 15(b). The Illinois Supreme Court has made clear that undefined statutory terms must be given their popularly understood meanings, or, where appropriate, their "settled legal meaning." *Rosenbach v. Six Flag Entertainment Corporation*, 129 N.E.3d 1197, 1205 (Ill. 2019); see also *People v. Chapman*, 965 N.E.2d 1119, 1126 (Ill. 2012) ("When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term.").

The Illinois Supreme Court has held that "possession, as ordinarily understood, occurs when a person has or takes control of the subject property and holds the property at his or her disposal." *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005). "The ordinary meaning of possession does not contemplate exclusive control, and nothing in the BIPA indicates that the ordinary definition of possession does not apply." *Heard v. Becton, Dickinson, & Co.*, 440 F.Supp.3d 960, 968 (N.D. Ill. 2020).

As most relevant to BIPA, the term "capture" can mean "to record in a permanent file (as in a computer)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/capture (last visited Aug. 19, 2022); *Watson v. Legacy Healthcare Fin. Servs.*, —N.E.3d—, 2021 WL 5917935, *7 (Ill. App. Ct. Dec. 15, 2021) (applying that definition in BIPA context). "Collect" may be defined as "to bring together into one body or place" or "to gather or exact from a number of persons or sources." https://www.merriam-webster.com/dictionary/collect (last visited Aug. 19, 2022); *Watson*, 2021 WL 5917935, *8 (applying the "gather" definition).

*Defendant's Motion to Dismiss*

In its Motion to Dismiss, Defendant contends that Plaintiff failed to plausibly allege that Defendant captured or collected (pertaining to Count I, an alleged violation of § 15(b)) or possessed (pertaining to Count II, an alleged violation of § 15(a)) Plaintiff's facial geometry. Thus, Defendant argues, Plaintiff failed to adequately allege that Defendant was even subject to BIPA's requirements.

Defendant raises a number of distinct arguments in support of those central claims. The court will begin by addressing those arguments that apply to both Count I and Count II and will then proceed to address the count-specific claims.

Defendant first argues that Plaintiff's allegations, on both counts, "do nothing more than parrot the statutory language of BIPA." Defendant characterizes Plaintiff's Complaint as "bare-bones" and "formulaic," and decries "[t]he absence of any factual content" relating to Plaintiff's personal use of VTO on Defendant's website. Defendant maintains that these shortcomings are "plainly evident" in Paragraphs 32 and 33 of the Complaint, wherein Plaintiff alleges that Defendant "captured and collected" his facial geometry and, by information and belief, stored it thereafter.

Defendant is correct in at least this sense: If Paragraphs 32 and 33 were the only substantive paragraphs of the Complaint, it would be insufficient. But Defendant seems to neglect the remainder of the Complaint in making its argument. The Complaint alleges in relatively thorough detail the process by which a visitor to Defendant's websites would find and make use of VTO, as well as the process by which VTO works, including the creation of a detailed geometric map of the user's face. Where the Complaint alleges that Plaintiff used VTO on Defendant's website, it can be inferred that his experience aligned with that detailed earlier in the Complaint. The paragraphs cited by Defendant as conclusory *are* conclusory, because they are conclusions drawn from the preceding factual allegations.

Defendant next argues—again as to both counts—that Plaintiff has "pleaded himself out of court" because his allegations "affirmatively demonstrate" that a third-party developer, rather than Defendant, "may have been solely responsible" for the alleged collection and possession of biometric data.

Where a plaintiff provides additional facts in his complaint, he cannot prevent a defendant from suggesting that those same facts undermine his claim for relief. *McReady v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). A plaintiff can "plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). In other words, "a plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016).

Defendant accurately points out that Plaintiff alleged that VTO is "powered by" an application developed and marketed by a third party. Defendant's theory, it seems, is that the Complaint leaves open the possibility that the third party, through its application, collected (and thus possessed) the biometric identifiers while Defendant itself was completely walled off from the process, such that the third party "may have been solely responsible" for the conduct that violated BIPA.

Defendant's own use of the phrase "may have been" indicates that Plaintiff has not necessarily contradicted his own claim. See *id*. Is it possible that the application was implemented on Defendant's website in such a way that the third party, and only that third party, captured, collected, and possessed the facial geometry in question? Perhaps.

But that is far from a necessary conclusion to be drawn from Plaintiff's allegations. Plaintiff has not pled himself out of court.

Capture/Collection in Violation of § 15(b) (Count I)

A violation of § 15(b) of BIPA requires "an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard*, 440 F. Supp. 3d at 966 (quoting 740 Ill. Comp. Stat. 14/15(b)). Defendant insists that Plaintiff has failed to plausibly allege that Defendant was "actually involved" in the capture or collection of biometric data or that it engaged in any affirmative act of collection.

In *Heard*, the plaintiff alleged that his biometric data had been collected through an automated medication dispensing system manufactured by the defendant, which required a fingerprint for access. *Id*. at 962. The plaintiff, a respiratory therapist, had worked with the device at multiple hospitals. *Id*. He alleged that the defendant had violated § 15(b). After determining that a § 15(b) violation required an "active step," the *Heard* court concluded that the plaintiff had not adequately pled that the defendant "took any such step." *Id*. at 966.

Other cases have been decided on the same basis, if not always invoking the "active step" language. In *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 729 (N.D. Ill. 2019), the plaintiff alleged that Kronos provided her employer, Brookdale Senior Living, Inc., with an employee timekeeping system that operated via scanned fingerprint. The court dismissed the plaintiff's § 15(b) claim against Kronos, pointing out that it was "Brookdale [that] collected the fingerprints using a system that Kronos supplied to Brookdale." *Id*. at 286.

10

Similarly, in *Bernal v. ADP, LLC*, 2019 WL 5028609 (Cook Cnty. Ill. Cir. Ct. Aug. 23, 2019), a case relied upon by the *Namuwonge* court, the plaintiff was required by his employer to clock in and clock out using biometric identifiers, through technology provided by the defendant. The circuit court dismissed the § 15(b) claim, reasoning that the Illinois legislature did not intend for that subsection to apply to third-party entities and that "there is nothing to suggest that BIPA was intended to apply to situations wherein the parties are without any direct relationship." *Id*. at *1.

Finally, in *Jacobs v. Hanwha Techwin America, Inc.*, 2021 WL 3172967 (N.D. Ill. July 27, 2021), the defendant was the manufacturer of security cameras capable of performing facial recognition. The plaintiff alleged that multiple such cameras were installed at a T.J. Maxx store that he visited. *Id*. at *1. Like the *Heard* court, the *Jacobs* court determined that "an active step to collect [or] capture" was required under § 15(b). *Id*. at *2. The court dismissed the claim, concluding: "[A] complete reading of the complaint makes clear that defendant is merely a third-party technology provider (that is, merely provided the cameras), and that the active collector and processor of the data is T.J. Maxx." *Id*. at *3.

Defendant relies heavily on each of the above cases in ostensible support for its claim that Plaintiff has not plausibly alleged any active step to collect biometric data. However, clearly, the facts in each of those cases are diametrically opposed to the facts in this case.

Defendant is not a developer or manufacturer of biometric-data-collecting technology who sells that technology to clients. Defendant *is* the client.

The allegations in Plaintiff's Complaint, taken as true, establish that Defendant procured the YouCam Makeup application, placed it on its bareminerals.com website under the name Virtual Try On, and put buttons or links to that application on pages for a number of its makeup products, thus directing website users to the application. Defendant refers in its Motion to "the mere ***passive*** activity of making a VTO feature available on the Website." (Emphases in original). But simply calling its own activities "passive" does not make them so. In fact, it ignores the multiple affirmative steps necessary for Defendant to bring VTO to its customers.

Defendant does not seem to make an argument that VTO or the YouCam Makeup application does not capture or collect biometric identifiers. Rather, its argument seems limited to the contention that Defendant itself cannot be said to have actively participated in the collection or capture. Indeed, the Complaint alleges that the technology on Defendant's websites creates a 100-point geometric map of the user's face. Defendant does not dispute that such a map amounts to "face geometry," which is included in BIPA's definition of biometric identifiers. See 740 Ill. Comp. Stat. 14/10. Plaintiff's allegation that such a map was created through Defendant's website amounts to a plausible allegation that Defendant actively captured and/or collected biometric identifiers.

Possession in Violation of § 15(a) (Count II)

The parties agree that in order to be in "possession" of biometric data under BIPA, one must have control over the data or otherwise have it at their disposal. See *Heard*, 440 F. Supp. 3d at 968 (citing *Ward*, 830 N.E.2d at 560).

Defendant points out that, in Paragraph 33 of the Complaint, Plaintiff alleges that "Upon information and belief, Defendant also stored [Plaintiff's] facial geometry." Defendant calls this allegation "rank speculation," and cites to *Heard* for the assertion that a plaintiff may not "plead possession solely upon 'information and belief.'"

Initially, *Heard* does not support that proposition. In fact, while the *Heard* court ultimately found the plaintiff's pleading insufficient, it affirmed that "'[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.'" *Id*. at 969 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). More importantly, Plaintiff's allegation with respect to Defendant's purported *storage* of biometric data has no bearing on its *possession* of that data, as BIPA itself makes clear that those are distinct concepts. See 740 Ill. Comp. Stat. 14/15(e)(1) (requiring entities in "possession" of biometric data to "store" the data in prescribed fashion). Indeed, even if Defendant disposed of the data, it must have first held the data at its disposal.

In any event, Plaintiff's allegations as to possession go beyond information and belief. As discussed above, Plaintiff's biometric identifiers were captured through technology placed on Defendant's websites. At this stage of the proceedings, it can be

13

plausibly inferred that Defendant controls or holds at its disposal data generated at its own websites. See *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (observing that the court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor.").

Accordingly, Defendant's Motion to Dismiss (#7) is DENIED.

*Defendant's Motion to Strike Class Allegations*

In its Motion to Strike Class Allegations (#6), Defendant seeks to strike allegations relating to three other websites owned by Defendant—those for Nars Cosmetics, Laura Mercier, and Cle de Peau—which Plaintiff alleged also feature VTO. Defendant points out that Plaintiff never visited those websites and thus never suffered any injury related to them. Accordingly, Defendant argues that Plaintiff "does not have standing to bring claims for BIPA violations in connection with" those websites. Without standing to himself raise claims concerning those other websites, Defendant contends, Plaintiff cannot represent a class that includes those who suffered injury through those websites.

Defendant additionally argues that Plaintiff's purported lack of standing, while itself a basis for striking the class allegations, also renders him unable to satisfy the class requirements of Federal Rules of Civil Procedure 23(a) and (b). Specifically, Defendant claims that Plaintiff cannot meet the "typicality" and "adequacy of representation" requirements. See Fed. Rs. Civ. P 23(a)(3) & (a)(4).

14

Motions to strike class allegations are not analyzed under Rule 12(f), but under Rule 23. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Such motions are appropriate at the pleading stage where "it is clear from the pleadings that the class claims are defective. But if the issues concerning class certification are factual, requiring discovery to determine whether certification is appropriate, a motion to strike class allegations at the pleading stage is premature." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021).

To be sure, Defendant has identified *a* difference between Plaintiff and others in the class he seeks to represent. Plaintiff would have suffered his injury while visiting Defendant's bareminerals.com website, while others in the class would have suffered their injuries at websites never even visited by Plaintiff. Still, the injuries suffered by the class members, including Plaintiff, would otherwise be remarkably similar. Namely, all would have had their facial geometry captured by Defendant while utilizing the VTO feature at one of Defendant's websites.

As the First Circuit has explained:

> [T]he question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?

*In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018). The *Asacol* decision was itself based in large part on the Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244 (2003). There the Court rejected the notion that minor differences between a named plaintiff and the class he seeks to represent deprive that plaintiff of Article III standing.

*Id*. at 245-46. In that case, the Court found that the plaintiff had standing to challenge a university admissions process where he had sought to transfer into the university while the class would also include freshman applicants, given that the processes for evaluation for the different groups were nearly identical. *Id*.

The Seventh Circuit, for its part, has rejected the very notion of "standing to bring a class action" as a concept distinct from standing itself. *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (citing *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)). It has stated that such a phrase "conflat[es] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative[.]" *Payton*, 308 F.3d at 677. The court has concluded: "In our view, it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria." *Arreola*, 546 F.3d at 795; see also *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) ("[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." (cleaned up)).

It is undisputed that Plaintiff has standing—what Defendant might call individual standing—to bring a claim against Defendant. Defendant conceded as much in its Notice of Removal. See Docket Entry #1 ("Plaintiff Has Alleged Concrete Material Harms Sufficient to Establish Article III Standing."). If further Article III analysis is required beyond that, it is sufficient to observe that the differences between Plaintiff and the potential class are not of a type that would leave Plaintiff without a personal

16

stake in the adjudication of the claims. See *In re Asacol Antitrust Litig.*, 907 F.3d at 49. Indeed, the injury of Plaintiff or any class member—again, the capturing of biometric identifiers through VTO—would be identical regardless of through which website the person accessed VTO. See *Gratz*, 539 U.S. at 246.

Still, it remains to be considered whether, at this early stage, it is clear from the pleadings that Plaintiff cannot satisfy the Rule 23 requirements. Defendant contends that the same differences between Plaintiff and other class members—the use of different websites—also defeats typicality under Rule 23(a)(3) and the adequacy of representation under Rule 23(a)(4).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [named plaintiff's] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Some factual variations will not defeat typicality, as long as "the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

According to the Complaint, there is no consequential difference between the VTO offered on the bareminerals.com website and on any of Defendant's other websites.

Plaintiff's claim is based on essentially the same course of conduct as would the claims of any class members who visited the other websites, and the legal theory under BIPA would be identical. Thus, the differences identified by Defendant do not defeat typicality.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In order to be an adequate representative, the named plaintiff must 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)).

Defendant asserts that adequacy is lacking because "Plaintiff is plainly not a member of any aggrieved class of individuals who used the Nars Cosmetics, Laura Mercier, and Cle de Peau websites." Of course, if the proposed class was defined as individuals who used those three websites, Defendant would once again be correct. But the proposed class is defined, in part, as "All persons whose biometric identifiers were captured by Defendant through use of the Virtual Try On tool on Defendant's websites, including bareminerals.com, narscosmetics.com, lauramercier.com, and cledepeaubeaute.com[.]" Plaintiff clearly *is* a member of this class.

Finally, Defendant makes a cursory assertion that Plaintiff cannot meet the commonality requirement (see Fed. R. Civ. P. 23(a)(2)) or any one of the Rule 23(b) requirements (see Fed. R. Civ. P. 23(b)). However, Defendant's only "argument" on

those points is a reference to its earlier contention that Plaintiff lacks standing. That argument having already been rejected, the court need not conduct any further analysis.

In sum, the court finds it is not "clear from the pleadings that the class claims are defective." *Garrard*, 575 F. Supp. 3d at 999. Accordingly, Defendant's Motion to Strike Class Allegations (#6) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss (#7) is DENIED.

(2) Defendant's Motion to Strike Class Allegations (#6) is DENIED.

(3) The stay is lifted and the matter is referred to the Magistrate Judge for further proceedings.

ENTERED this 22nd day of August, 2022.

s/Colin Stirling Bruce
COLIN S. BRUCE
U.S. DISTRICT JUDGE