# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| GEORGE R. POWELL, and BRITTANY FERGUSON, individually and on behalf of all others similarly situated | Case No. 21-2295 |
| Plaintiffs, | The Hon. Judge Colin S. Bruce, U.S. District Court Judge |
| v. | The Hon. Eric I. Long, Magistrate Judge |
| SHISEIDO AMERICAS CORPORATION, a Delaware corporation, PERFECT CORP., a Cayman Islands corporation, and PERFECT CORP., a California corporation, | |
| Defendants. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs George Powell and Brittany Ferguson (together "Plaintiffs") brings this Class Action Complaint individually and on behalf of all other similarly situated individuals against Defendants Shiseido Americas Corporation ("Shiseido"), Perfect Corp., a Cayman Islands corporation ("Perfect Parent") and Perfect Corp., a California corporation ("Perfect USA") (collectively "Perfect" and together with Shiseido "Defendants") pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq*. Plaintiffs file suit to remedy Defendants' unlawful collection, storage, and use of Plaintiffs' and the proposed class's biometrics without their informed written consent through the Virtual Try On tool offered on Shiseido's various online cosmetic websites.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff George Powell resides in Danville, Illinois.

2.      Plaintiff Brittany Ferguson is an individual citizen of the State of Illinois.

3.      Defendant Shiseido Americas Corporation is incorporated in Delaware with its principal place of business in New York, New York.

1

4.     Defendant Perfect Corp. ("Perfect Parent") is a corporation organized and incorporated in the Cayman Islands and headquartered in New Taipei, Taiwan.  Perfect Parent's stock is publicly traded on the New York Stock Exchange.

5.     Defendant Perfect Corp. ("Perfect USA") is a California corporation with its principal place of business in San Jose, California.  Perfect USA is a wholly-owned subsidiary of Perfect Parent.

6.     Perfect is one of the world's leading providers of AI and AR services to the beauty and fashion industries, including licensing its Virtual Try-On tools to Shiseido for use on Shiseido's websites.

7.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiffs and Defendants are domiciled in different states/countries; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

8.     This Court has personal jurisdiction over Shiseido because Shiseido purposefully availed itself of the laws, protections, and advantages of Illinois by conducting business in this State with consumers like Plaintiffs.

9.     This Court has personal jurisdiction over Perfect because Perfect regularly ran and provided Virtual Try-On tool sessions to Shiseido websites' users in Illinois, including by downloading the code necessary to run the Virtual Try-On tool sessions onto Illinois consumers' devices, without the consumers' knowledge, while the consumers were in Illinois.  Thus, Perfect reached into Illinois in order to provide and place code necessary to run the Virtual Try-On tool sessions onto consumers' devices in Illinois.  Accordingly, Perfect's contacts with Illinois are systemic and continuous by virtue of its provision and placement of the code enabling the Virtual Try-On tool sessions onto Illinois consumers' devices in Illinois.  Consumers were harmed because of Perfect's actions, and thus bring

suit against Perfect in this jurisdiction specifically related to the actions complained of in the forum state.

10.     Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE BIPA LEGAL FRAMEWORK

11.     The Illinois General Assembly enacted BIPA to protect the privacy rights of consumers in Illinois.

12.     In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection of this information when companies collect it from consumers like Plaintiffs. Specifically, the General Assembly found that "[b]iometrics are unlike other unique identifiers" like social security numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 ILCS 14/5(c). Thus, an individual whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id.* Moreover, said the General Assembly, "[t]he full ramifications of biometric technology are not fully known." *Id.* § 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 14/5(f).

13.     BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 14/10.

14.     "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id.*

3

15.     Accordingly, BIPA requires "private entities" like corporations that collect certain biometric identifiers or biometric information to take a number of specific steps to safeguard consumers' data; inform consumers of the entities' uses, retention of, and destruction of their biometrics; and obtain informed consent before collecting such data.

16.     With respect to safeguarding biometrics, BIPA requires that private entities in possession of biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id.* § 14/15(a).

17.     Further, BIPA requires that any private entity in possession of biometric identifiers or biometric information must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id.* § 14/15(e).

18.     With respect to informed consent, BIPA provides:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first
>
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id.* § 14/15(6).

19.    Further, BIPA provides: "No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id.* § 14/l1(c).

20.    Under BIPA, a private entity is prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information unless the consumer has consented to the disclosure or redisclosure. *Id.* § 14/15(d).

21.    BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id.* § 14/20. Where a violation is the result of negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and if the violation was intentional or reckless, the greater of actual damages and liquidated damages of $5,000 per violation. *Id.*

## DEFENDANTS COLLECT BIOMETRICS THROUGH THE VIRTUAL TRY ON TOOL

22.    Shiseido is a global beauty company that markets a wide range of color cosmetics, fragrance, and skincare products for a large portfolio of prestige beauty brands, including Shiseido, Nars, Laura Mercier, Buxom, Tory Burch, Drunk Elephant, Clé de Peau Beauté, bareMinerals, Issey Miyake, Narciso Rodriguez, and Dolce & Gabbana.

23.    Shiseido sells makeup products through various websites. On many of these websites, including bareminerals.com, narscosmetics.com/, lauramercier.com/, and cledepeaubeaute.com/, Shiseido offers a tool called Virtual Try On to consumers who visit the site.

24.     When consumers view a makeup product for which the Virtual Try On tool is available, Shiseido invites them to access the Virtual Try On tool by presenting a "Try On," "Try It On," or "Try Now" button that appears below the photo of the product being viewed.





25.     Consumers may also access the Virtual Try On tool through a separate page that lists all the products for which the Virtual Try On tool is available.



26.     When consumers click the "Try On," "Try It On," or "Try Now" button, they are taken to the Virtual Try On page. There, they can use their web or phone cameras to display a real-time photograph of themselves or, on some sites, upload a photo previously saved to their device.



27.     On some sites, the Virtual Try On tool activates consumers' webcams automatically, so that their real-time image appears as soon as they click the aforementioned "Try On" button. Once the webcam is on, users may then click an icon that allows them to take a photo using their web or phone camera.



28.      Once an image is displayed, the Virtual Try On tool automatically overlays the chosen makeup product on the user's face. From there, consumers can download or email the photo showing the makeup product applied to their face. Users may manipulate the photo in several ways, such as zooming in or out or "splitting" the image to show their face before and after the product is applied.



29.     The Virtual Try On tool on Shiseido's websites is powered by an application called "YouCam Makeup." This application operates by capturing the facial geometry of users' photos, regardless of whether the photo is taken by web or phone camera while using the Virtual Try On tool, uploaded to the tool, or captured via a live web or phone camera feed. These facial-geometry scans are used to identify the shape and features of the user's face in order to accurately overlay the virtual makeup product onto the image provided. According to Perfect, the developer of YouCam Makeup, the application uses "proprietary AgileFace® technology to deliver ultra-accurate face tracking" and "precise makeup product application that stays in the correct position with head movements, allowing them to examine the look and see the tutorials form multiple angles."[1]

---

[1] Perfect Corp., *YouCam Tutorial*, https://www.perfectcorp.com/business/products/youcam-tutorial (last visited Sept. 25, 2021).

30.     Upon information and belief, Perfect licenses the Virtual Try-On technology to Shiseido and runs the Virtual Try-On tool on Shiseido's websites on behalf of Shiseido, and with Shiseido's consent.

31.     According to one article, the YouCam Makeup application "uses 100 points of tracking on the face for facial recognition and skin-tone matching. Its technology can recognize the role of lighting and recommend products for users' specific skin types and concerns."[2] The photo below, taken from the YouCam Makeup developer's website, illustrates the facial-geometry patterns that power the application.



**Hyper-realistic virtual makeovers powered by patented AgileFace® Tracking technology, creating an unparalleled beauty experience**

32.     The developer of the YouCam Makeup application markets its product at least in part on its ability to capture, store, and use users' biometrics to market products to them. According to the developer's Vice President of Marketing, "in the near future, consumers will be able to walk into a store, and the in-store technology will be able to identify and recommend products they've tried on virtually before."[3]

33.     Defendants do not inform consumers who use the Virtual Try On tool in writing that Defendants are capturing or collecting facial geometry or the specific purpose and length of term for

---

[2] Leah Prinzivalli, *How YouCam Makeup is building a beauty AR empire*, Glossy (Jul. 5, 2018), https://www.glossy.co/new-face-of-beauty/how-youcam-makeup-is-building-a-beauty-ar-empire/.
[3] *Id.*

which Defendants are collecting, storing, or using such data, which is a biometric identifier specifically protected by BIPA. Nor do Defendants obtain consumers' informed written consent before capturing or collecting such data.

34.     Defendants also do not make publicly available on the Brand Websites a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from consumers, as required by BIPA.

35.     Upon information and belief, Defendants have not developed a written policy for the Brand Websites establishing retention schedules and guidelines for permanently destroying consumers' biometrics and do not destroy such data within the timeframes established by BIPA.

## PLAINTIFF-SPECIFIC ALLEGATIONS

*Plaintiff George Powell*

36.     Mr. Powell is a lifelong resident of Illinois.

37.     He is an accomplished entertainer who regularly performs in drag shows. His on-stage appearance is an important component of his performance, so he frequently shops online and in stores for the best makeup brands and combinations.

38.     Beginning around late-February 2021, Mr. Powell began to visit bareMinerals.com to search for makeup products. Over the next five months, he visited the site and used the bareMinerals Virtual Try On tool approximately six times.

39.     Each time he used the bareMinerals Virtual Try On tool, Defendants captured and collected his facial geometry.

40.     Upon information and belief, Defendants also stored his facial geometry thereafter.

41.     Defendants did not inform Mr. Powell in writing that they were capturing, collecting, storing, or using scans of his facial geometry; did not inform him in writing of the specific purpose and length of time for which his facial geometry was being collected, stored, or used; and did not

obtain a written release from Mr. Powell authorizing Defendants to collect, store, or use his facial geometry.

42.    Mr. Powell has never been informed of the specific purposes or length of time for which Defendants collected, stored, or used his facial geometry; any biometric data retention policy developed by Defendants; or whether Defendants will ever permanently delete his biometrics. Defendants have not made any of this information available to the public.

43.    Mr. Powell does not know whether Defendants have destroyed—or will destroy—the biometrics collected from him.

*Plaintiff Brittany Ferguson*

44.    Ms. Ferguon has, at relevant times, had her biometrics – her facial geometry and associated information – collected, captured, and used by Defendants.

45.    Ms. Ferguson has used Defendants' Virtual Try-On tool on Shiseido's nars.com website during her residence in Illinois and at her home in Illinois.

46.    Defendants' Virtual Try-On tool functions by collecting, capturing, and using facial biometrics.

47.    Each time Ms. Ferguson used Defendants' Virtual Try-On tool, it scanned her face before collecting and capturing her biometric information. Then, the Virtual Try-On tool allowed Ms. Ferguson to see how her face would look with various of Shiseido's products superimposed on her face.

48.    Each time Ms. Ferguson used Defendants' Virtual Try-On tool the program re-scanned her face, recollecting her biometric information and storing the same information in its database. Accordingly, each use of Defendants' Virtual Try-On tool constituted a separate and distinct unlawful collection of Ms. Ferguson's biometrics.

49.     Ms. Ferguson was never made aware of any publicly available BIPA policy nor was one readily apparent on Shiseido's websites. Further, Ms. Ferguson was never provided the information required by BIPA from Defendants.

50.     Ms. Ferguson has never been informed of the specific purposes or length of time for which Defendants collected, stored, or used her biometrics.

51.     Ms. Ferguson has never been informed of any biometric data retention policy developed by Defendants; or whether Defendants will ever permanently delete her biometrics. Defendants have not made any of this information available to the public.

52.     Ms. Ferguson has never been provided with nor ever signed a written release allowing Defendants to collect, capture, store, or otherwise obtain her facial scan or facial geometry biometrics.

53.     Ms. Ferguson does not know whether Defendants have destroyed—or will destroy—the biometrics collected from her.

## CLASS ALLEGATIONS

54.     Plaintiffs bring this action on behalf of themselves and, pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of similarly situated individuals (hereinafter "the Class") defined as follows:

> All persons whose biometric identifiers were captured by Defendants through use of the Virtual Try On tool on Shiseido's websites, including bareminerals.com, narscosmetics.com, lauramercier.com, and cledepeaubeaute.com, while residing in Illinois from five years preceding the date of the filing of this action to the present.

55.     Excluded from the class are Defendants' officers and directors, Plaintiff's counsel, and any member of the judiciary presiding over this action.

56.     Numerosity—Federal Rule of Civil Procedure 23(a)(1): Upon information and belief, there are more than forty class members, and individual joinder in this case is impracticable. The proposed class is sufficiently numerous that individual joinder of all Class members is impracticable.

The precise number of Class members is presently unknown to Plaintiffs but may be ascertained from Defendants' books, records, and electronically stored information.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

57.     Commonality and predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3): Multiple questions of law and fact are common to the class and predominate over any individualized questions. Common questions include, but are not limited to, whether Defendants have a practice of capturing, collecting, storing, or distributing consumer biometrics obtained through consumers' use of the Virtual Try On tool on Shiseido's websites; whether Defendants have developed and made publicly available a written policy establishing a retention schedule and guidelines for destroying consumer biometrics; whether Defendants obtained an executed written release from consumers whose faces were scanned using the Virtual Try On tool on Shiseido's websites before capturing their biometrics; whether Defendants' practices violate BIPA; and whether Defendants' conduct was willful, reckless, or negligent.

58.     Typicality—Federal Rule of Civil Procedure 23(a)(3):  Plaintiff's claims are typical of Class members' claims because Plaintiffs and each Class member used the same Virtual Try-On tools on Shiseido's websites, through which Defendants captured, collected, purchased, received through trade, or obtained their biometric identifiers or biometric information, and did not inform Plaintiffs or Class members of such capture, collection, purchase, receipt through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric identifiers or biometric information from Plaintiffs or Class members.

59.     Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of all Class members. Plaintiffs have retained

counsel with significant experience and achievements in complex class action litigation, he has no interests that are antagonistic to those of any Class members, and Defendants have no defenses unique to either Plaintiff.

60.    Superiority—Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other means for the fair and efficient adjudication of the controversy because it will resolve multiple issues common to the Class in a single stroke. No unusual difficulties are likely to be encountered in the management of this class action.  Individualized litigation, in contrast, creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, a class action would reduce the time and expense of litigation and promote judicial economy by jointly resolving a large number of individual claims that would otherwise be litigated separately in duplicative proceedings.  The class action device also provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## VIOLATION OF 740 ILCS 14/15(b)
### Failure to Inform in Writing and Obtain Written Release from Consumers Prior to Capturing, Collecting, or Storing Biometric Identifiers
### Damages and Injunctive Relief
### *Alleged Against All Defendants on Behalf of Plaintiffs Individually and on Behalf of the Class*

61.    Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs.

62.    The bareMinerals.com Virtual Try On tool operates by capturing the facial geometry of consumers like Plaintiffs and Class members.

63.    The nars.com Virtual Try-On tool operates by capturing the facial geometry of consumers like Plaintiffs and Class members.

64.    Facial geometry is a biometric identifier protected by BIPA.

65.    BIPA prohibits private entities like Defendants from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining consumers' biometric identifiers or biometric

16

information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by consumers whose biometric identifiers or biometric information is being collected.

66.     Defendants did not provide any of these required written disclosures or obtain the required written release from Plaintiffs or Class members prior to collecting, storing, or using their facial geometry data obtained through use of the bareMinerals.com Virtual Try On tool.

67.     As a result, Defendants have invaded the privacy of Plaintiffs and Class members and unlawfully collected, used, and benefitted from their biometric identifiers while failing to provide them with the lawfully required notice of such collection and use.

68.     Accordingly, Defendants have violated BIPA. These violations have harmed Plaintiffs and Class members; accordingly, Plaintiffs and Class members are entitled to liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages if greater than the liquidated damages provided for by BIPA.

69.     Moreover, an injunction is warranted pursuant to 740 ILCS 14/20(4). Upon information and belief, Defendants currently possess Plaintiffs' and Class members' biometrics and may be using or distributing them to third parties without Plaintiffs' or Class members' permission. Such a violation of privacy constitutes irreparable harm for which there is no adequate remedy at law.

70.     Absent injunctive relief, Defendants are likely to continue storing Plaintiffs' and Class members' biometrics.

71.     Accordingly, Plaintiffs seek an order requiring Defendants to obtain a written release from any individual prior to the capture, collection, or storage of that individual's biometric identifiers or biometric information.

72.     Further, Plaintiffs seek an order requiring Defendants to disclose whether Defendants have retained Plaintiffs' and Class members' biometrics, how Defendants use Plaintiffs' and Class members' biometrics, and the identities of any third parties with which Defendants shared those biometrics.

**COUNT 2**
**VIOLATION OF 740 ILCS 14/15(a)**
**Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers**
**Damages and Injunctive Relief**
*Alleged Against All Defendants on Behalf of Plaintiffs Individually and on Behalf of the Class*

73.     Plaintiffs re-allege and incorporate the allegations in the paragraphs above.

74.     The bareMinerals.com Virtual Try On tool operates by capturing the facial geometry of consumers like Plaintiffs and Class members.

75.     The nars.com Virtual Try-On tool operates by capturing the facial geometry of consumers like Plaintiffs and Class members.

76.     Facial geometry is a biometric identifier protected by BIPA.

77.     BIPA requires private entities, like Defendants, in possession of biometric identifiers or biometric information to develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

78.     Upon information and belief, Defendants did not develop or possess such a written policy at any time during its collection, storage, and use of Plaintiffs' and Class members' facial geometry data obtained through use of the Virtual Try On tool on Shiseido's various websites, including bareminerals.com.

18

79.     As a result, Defendants denied Plaintiffs and Class members their right under BIPA to be made aware of Defendants' retention and destruction policies as to their biometric identifiers. Additionally, Defendants' failure to develop the required retention and destruction policies placed Plaintiffs and Class members' sensitive biometric identifiers at risk of compromise or illicit use.

80.     Accordingly, Defendants have violated BIPA. These violations have harmed Plaintiffs and Class members; accordingly, Plaintiffs and Class members are entitled to liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages if greater than the liquidated damages provided for by BIPA.

81.     Moreover, an injunction is warranted pursuant to 740 ILCS 14/20(4). Upon information and belief, Defendants currently possess Plaintiffs' and Class members' biometrics and have not developed a BIPA-compliant policy for the retention and destruction of those biometrics. This failure to maintain a proper policy could place Plaintiffs and Class members' sensitive biometric identifiers at risk of compromise or illicit use on a continuing basis. It also deprives Plaintiffs and Class members' right under BIPA to be apprised of Defendants' policy for retaining and destroying biometrics.

82.     Absent injunctive relief, Defendants are likely to continue storing Plaintiffs' and Class members' biometrics without implementing a retention and destruction policy for those biometrics that satisfies BIPA's requirements.

83.     Accordingly, Plaintiffs seek an order requiring Defendants to publicly disclose a written policy establishing any specific purpose and length of term for which consumers' biometrics have been collected, captured, stored, obtained, or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

84.     Plaintiffs further seek an order requiring Defendants to disclose whether Defendants have retained Plaintiffs' and Class members' biometrics and if, when, and how those biometrics were destroyed.

**REQUEST FOR RELIEF**

85.     Therefore, Plaintiffs, individually and on behalf of the Class, request an order granting the following relief:

    a.  Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

    b.  Appointing Plaintiffs as representatives of the Class and the undersigned counsel as class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class against Defendants;

    d.  Awarding Plaintiffs and the Class liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each violation of BIPA;

    e.  Issuing an injunction ordering Defendants to comply with BIPA going forward and disclose to Plaintiffs and Class members whether Defendants possess their biometrics, Defendants' uses of their biometrics; and Defendants' retention and destruction policies regarding their biometrics;

    f.  Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 ILCS 14/20; and

    g.  Granting further relief as the Court deems appropriate.

Respectfully submitted,

Dated: October 24, 2023                    By: */s/ Nada Djordjevic*

Adam J. Levitt
alevitt@dicellolevitt.com
Amy E. Keller
akeller@dicellolevitt.com
Nada Djordjevic
ndjordjevic@dicellolevitt.com
James Ulwick
julwick@dicellolevitt.com
Sharon Cruz
scruz@dicellolevitt.com
DiCELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
Fax. (312) 253-1443


Hassan A. Zavareei
hzavareei@tzlegal.com
Glenn E. Chappell
gchappell@tzlegal.com
Shana Kader
skader@tzlegal.com
Allison W. Parr
aparr@tzlegal.com
Tycko & Zavareei LLP
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel. (202) 973-0900
Fax (202) 973-0950


James J. Pizzirusso
jpizzirusso@hausfeld.com
HAUSFELD LLP
888 16th Street, NW, Suite 300
Washington, DC 20006
Tel. 202-540-7200
Fax. 202-540-7201


Steven M. Nathan
snathan@hausfeld.com
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel. 646-357-1100
Fax. 212-202-4322


Bret K. Pufahl
bkp@fmcolaw.com
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel. (630) 232-7450
Fax. (630) 232-7452

Brandon M. Wise – IL Bar # 6319580
bwise@peifferwolf.com
PEIFFER WOLF CARR
KANE & CONWAY, LLP
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Ph: 314-833-4825

Aaron Siri, Esq. (*Pro Hac Vice To Be Filed*)
Mason Barney, Esq. (*Pro Hac Vice To Be Filed*)
aaron@sirillp.com
mbarney@sirillp.com
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10166
Telephone: 212-532-1091

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN LLC
jjagher@fklmlaw.com
923 Fayette Street
Conshohocken, PA 19428
610.234.6486
jjagher@fklmlaw.com

Katrina Carroll
katrina@lcllp.com
LYNCH CARPENTER, LLP
111 W. Washington St.
Suite 1240
Chicago IL 60602
312.750.1265

Gary M. Klinger
gklinger@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
866.252.0878

*Counsel for the Plaintiffs and the Putative Class*