## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **GEORGE R. POWELL and BRITTANY FERGUSON, individually and on behalf of all others similarly situated,** ) ) ) ) | |
| **Plaintiffs,** ) | |
| v. ) | **Case No. 21-CV-2295** |
| ) | |
| **SHISEIDO AMERICAS CORPORATION, et al.,** ) ) | |
| ) | |
| **Defendants.** ) | |

## <u>ORDER</u>

Plaintiff George R. Powell filed a putative class action Complaint (#1-1) in the Circuit Court of Vermilion County, Illinois. In the Complaint, Plaintiff alleged that Defendant, Shiseido Americas Corporation ("Shiseido"), violated sections 15(a) and 15(b) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 et seq. Shiseido removed (#1) the matter to this court on November 30, 2021.

On October 24, 2023, an Amended Complaint (#45) was filed, in which Brittany Ferguson was added as a Plaintiff. The Amended Complaint also added two new Defendants: Perfect Corp., a California Corporation ("Perfect California"), and Perfect Corp., a Cayman Islands Corporation ("Perfect Cayman").

Presently before the court are Motions to Dismiss filed by Perfect California (#61) and Perfect Cayman (#77). In their Motions, both Defendants seek dismissal based upon lack of personal jurisdiction, and, in the alternative, dismissal for failure to state a claim. Plaintiffs filed respective Responses (#66, #87), and Perfect California (#70) and Perfect Cayman (#89) each filed Replies.

For the reasons set forth below, Perfect California's Motion to Dismiss (#61) and Perfect Cayman's Motion to Dismiss (#77) are GRANTED on jurisdictional grounds, such that the court need not reach the parties' arguments concerning failure to state a claim.

## BACKGROUND

The following facts are taken from the allegations in Plaintiffs' Amended Complaint, as well as the exhibits attached by the parties to their filings. When ruling on a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the court accepts as true all well-pleaded factual allegations in the operative complaint and draws all reasonable inferences in favor of Plaintiffs. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 584 (7th Cir. 2021). Further, to the extent that the parties' affidavits create factual disputes bearing on the issue of jurisdiction, those disputes will be resolved in Plaintiffs' favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

*Allegations in the Amended Complaint*

Shiseido is a global beauty supply company that, among other things, sells makeup products on various websites. It is incorporated in Delaware with its principal place of business in New York. Some of Shiseido's websites offer a virtual try-on

("VTO") tool to consumers visiting the site. VTO is offered on at least four of Shiseido's websites: bareminerals.com, narscosmetics.com, lauramercier.com, and cledepeaubeaute.com. When a consumer views a specific makeup product for which VTO is available, the websites present a button beneath the image of the product, labeled "Try On," "Try It On," or "Try Now."

When a consumer clicks one of those buttons, they are taken to the VTO page, where they can use the camera on their computer or phone to display a real-time photograph of themselves, or, depending on the specific website, upload a previously saved photograph. Once an image is displayed, VTO automatically overlays the selected makeup product on the image of the consumer's face. The consumer has the option of downloading or being emailed the resulting image.

VTO "is powered by an application called 'YouCam Makeup.'" The application operates by "capturing the facial geometry of the users' photos," regardless of whether the consumer uploaded a photo or captured a live image via camera feed. The Amended Complaint further alleges: "According to Perfect, the developer of YouCam Makeup, the application uses 'proprietary AgileFace® technology to deliver ultra-accurate face tracking' and 'precise makeup product application that stays in the correct position with head movements, allowing [the user] to examine the look and see the tutorials from multiple angles.'" The YouCam Makeup application utilizes 100 points on the face for facial recognition and skin-tone matching.

3

Plaintiffs allege that they both, while residing in Illinois, used the VTO feature on one of Shiseido's websites. They further allege that none of the Defendants (1) inform consumers using VTO that they are capturing or collecting biometric data, or of the purpose or length of time for which it stores such data; (2) make publicly available any written policy relating to biometric data, including a policy related to "retention schedules and guidelines for permanently destroying consumers' biometrics."

Plaintiffs allege that Perfect[1] "licenses the [VTO] technology to Shiseido and runs the [VTO] tool on Shiseido's websites on behalf of Shiseido and with Shiseido's consent." Plaintiffs further describe Perfect's role with respect to the implementation of VTO in the jurisdictional portion of their Amended Complaint. There they allege that Perfect "regularly ran and provided [VTO] tool sessions to Shiseido websites' users in Illinois, including by downloading the code necessary to run the [VTO] tool sessions onto Illinois consumers' devices[.]"

*Declarations of Louis Chen*

In a declaration (#62-1) attached to Perfect California's Memorandum in Support of its Motion to Dismiss, Louis Chen states that he is the Chief Strategy Officer for Perfect Cayman and is familiar with the operations of Perfect California, a corporation organized under the laws of California with its principal place of business in San Jose.

---

[1] With respect to their substantive allegations, Plaintiffs do not distinguish between Perfect Cayman and Perfect California, referring to both collectively as Perfect.

Chen states that Perfect California licenses its VTO technology to clients like Shiseido. Clients are provided "with access to an online console to facilitate and offer user access to the VTO."

Chen further declares that Perfect California "has never been registered to do business in Illinois and has never had a designated agent for service of process in Illinois." It has never had a mailing address or telephone listing in Illinois or any sort of physical presence. Perfect California "has never owned, rented, leased, had a telephone number or maintained any real estate offices or places of business in Illinois." It has never had any employees, bank accounts, or physical assets in Illinois. Chen further maintains that Perfect California has never directed any advertising or marketing to Illinois, has never solicited business in Illinois, has never made sales in Illinois, and have never "targeted or focused any commercial activity in Illinois."

With respect to Perfect California's relationship with Shiseido, Chen states that it had no meetings or discussion with Shiseido in Illinois and did not enter into or negotiate any contracts with Shiseido in Illinois. Chen calls the VTO "geography-neutral," and states:

> The only interaction a user has with the VTO is through visiting the client's website (e.g., one of the Shiseido Brand Websites) and the user affirmatively accesses and downloads the VTO tool to the browser on the user's device. To interact with the VTO tool the user must grant access to the camera or select a photograph to use in conjunction with the VTO tool. Users can choose to end using the VTO tool at any time by navigating to another URL in their browser or by closing their browser window.

A similar declaration (#78-1) from Chen is attached to Perfect Cayman's Memorandum in Support of its Motion to Dismiss. Therein, Chen states that Perfect Cayman is incorporated under the laws of the Cayman Islands with its principal place of business in New Taipei City, Taiwan. Chen emphasizes that Shiseido's licensing agreement for the implementation of VTO is with Perfect California, not Perfect Cayman.

With respect to Perfect Cayman's ties to Illinois, Chen's second declaration is largely identical to his first. In other words, Perfect Cayman, like Perfect California, has never been registered to do business in Illinois, has never had a physical presence in Illinois, and has never directed any advertising or marketing to Illinois, etc.

*Plaintiffs' Evidence*

Plaintiffs have attached the same four exhibits to their respective Responses (#66-1, #87-1): (1) Perfect California's Statement of Information filing with the California Office of the Secretary of State; (2) Perfect Cayman's Form 20-F filing with the U.S. Securities and Exchange Commission; (3) Perfect's YouCam "Software as a Service" Privacy Policy; and (4) Perfect's "Perfect for Business Terms of Service."

Section 8 of Perfect's Privacy Policy states:

We may collect and process your biometric information for the purpose of providing personalized Services. We do not and will not use facial recognition or identification technology in providing our Services. Under certain biometric information protection law, including but not limited to Illinois Biometric Information Privacy Act ("BIPA"), we must inform you of how we collect and process Biometric Information (as defined under BIPA) as a result of the Services we provide to you, namely the AR and AI features.

Likewise, the Terms of Service make multiple references to BIPA, including Section 12.b and 13.iv, reproduced below:

[12.b.] <u>Indemnification.</u> You will indemnify us and our subsidiaries, affiliates, officers, agents, employees, partners, and licensors from any claim, demand, loss,

or damage, including reasonable attorneys' fees, arising out of or related to your Content, your use of the Services, your violation of the Terms, or any and all violation of applicable regulation including but not limited to Illinois Biometric Information Privacy Act.

[13.iv] We specifically disclaim any and all liability for any actions resulting from any and all violation of applicable regulation including but not limited to Illinois Biometric Information Privacy Act ("BIPA"), and you are solely accountable for any and all liability and damage occurs thereof.

Finally, in its Form 20-F filing, Perfect notes that "Certain of our customers and we have been named parties in lawsuits that allege violations of the BIPA through deploying our product and technology, including virtual try-on solutions that may be perceived as subject to these laws and regulations[,]" and acknowledges that such lawsuits may adversely impact its business.

## ANALYSIS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Where a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a prima facie case of personal jurisdiction." *Id*. (cleaned up). As noted above, any well-pleaded facts alleged in the Amended Complaint are taken as true and any factual disputes in the affidavits are resolved in Plaintiffs' favor. See *Tamburo*, 601 F.3d at 700. But where a defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the

pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'"
*ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting
*Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If
the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is
accepted as true. *Id.*

When a federal court sits in diversity, the court exercises personal jurisdiction to
the same extent as a state court. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 855 n.2
(7th Cir. 2011). Illinois' long-arm statute "permits its courts to exercise personal
jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment."
*Kipp v. Ski Enterprises Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). "The Due
Process Clause authorizes personal jurisdiction over out-of-state defendants when the
defendant has 'certain minimum contacts with [the state] such that the maintenance of
the suit does not offend traditional notions of fair play and substantial justice.'" *Id.*
(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Courts recognize two types of personal jurisdiction: general and specific."  *Id.*
(citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). General jurisdiction is
considered to be "all-purpose," existing "only 'when the [party's] affiliations with the
State in which suit is brought are so constant and pervasive as to render it essentially at
home in the forum State.'" *Id.* at 697-98 (quoting *Daimler AG*, 571 U.S. at 122). Plaintiffs
make no argument that either of the Perfect Defendants have the sort of constant and
pervasive affiliations with Illinois to confer this court with general personal jurisdiction
over them.

The question of specific jurisdiction concerns "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620-21 (7th Cir. 2022). "To be subject to specific personal jurisdiction in a forum state, the defendant must have 'purposefully directed' its activities to the forum state, and the litigation must relate to those activities." *Id.* at 621 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); see also *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (describing the first requirement for personal jurisdiction as: "purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum"). "For purposeful availment, the defendant must have 'certain minimum contacts' with the forum state." *Id.* (quoting *International Shoe*, 326 U.S. at 316).

The Seventh Circuit has reminded courts that the "focus is on the contacts that the defendant itself created with the forum state; the defendant cannot be 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *NBA Properties*, 46 F.4th at 623-24 (quoting *Burger King*, 471 U.S. at 475).

Specific personal jurisdiction "is not established merely because a website is available in the forum." *Moomaw v. GeoSnapShot PTY LTD*, 2024 WL 991531, at *6 (S.D. Ill. Mar. 7, 2024) (citing *NBA Properties*, 46 F.4th at 619)). "Rather, the website operator must stand ready and willing to do business with residents of the forum and then knowingly do business with those residents." *Id.* (citing *NBA Properties*, 46 F.4th at 619).

Even the operation of a website that might be described as "interactive" is itself an insufficient contact with the forum state. *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." (emphasis in original)). As the Seventh Circuit has observed, "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014). "Courts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC*, 642 F.3d at 558 (quoting *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). Thus, the Seventh Circuit has held: "If the defendant merely operates a website, even a

'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *Id*. at 558-59 (collecting cases); see also *Advanced Tactical*, 751 F.3d at 803 ("[T]he operation of an interactive website does not show that the *defendant* has formed a contact with the forum state. And, without the defendant's creating a sufficient connection (or 'minimum contacts') with the forum state itself, personal jurisdiction is not proper." (Emphasis in original)).

At first blush, Perfect's[2] contacts with Illinois seem even more attenuated than those website operators in the above cases. After all, it is Shiseido that operates the websites through which Plaintiffs and others were allegedly harmed. Perfect merely provides one component of those websites, the VTO tool.

Plaintiffs argue otherwise. They point to the allegation in the Amended Complaint that "Perfect licenses the Virtual Try-On technology to Shiseido and *runs* the Virtual Try-On tool on Shiseido's websites[.]" (Emphasis added). They thus make numerous references in their Responses to Perfect "run[ning] the VTOs" or "running VTO sessions." These allegations seem to suggest, at least, that Perfect is an active, real-time participant when users engage in VTO on Shiseido's websites. Of note, Plaintiffs

---

[2] While Perfect Cayman and Perfect California are separate defendants and have filed separate Motions to Dismiss, the court observes that those Motions—prepared and filed by the same attorney—are substantively identical to one another. Indeed, if there is any meaningful difference between the two Defendants' jurisdictional contacts with Illinois, neither corporation has seen any need to discuss them. Accordingly, unless otherwise necessary, the court will refer to Perfect Cayman and Perfect California collectively as Perfect from this point forward.

provide no evidentiary support on this point—via affidavit or declaration—instead relying simply on the allegations in the Amended Complaint.

Perfect's evidence relating to the precise workings of VTO on Shiseido's websites is similarly thin, limited to a single point in Chen's declaration: "[T]he VTO provides clients with access to an online console to facilitate and offer access to the VTO. The VTO enables clients to deliver a virtual try-on experience directly on the client's website or mobile application."

There is no factual dispute created by the affidavits, as Plaintiffs have filed no affidavits. At the same time, the court cannot find that Chen's declaration conflicts with Plaintiffs' factual allegations. While Chen asserts that Shiseido was provided "with access to an online console," he does not directly address the question of what party remains in control of that console. Does Shiseido embed the console in its websites, then take over from there? If that is the case, Chen fails to make it clear. Accordingly, the court accepts that Perfect "runs" the VTO, even on Shiseido's website. In essence, Perfect operates or controls a portion of the Shiseido website, such that it may be considered sufficiently analogous to the website operators discussed in the cases above.

Of course, the very point of those cases is that simply operating a website—even a highly interactive one—is an insufficient jurisdictional contact. Thus, Plaintiffs raise a number of additional arguments in an attempt to show that Perfect's contacts with Illinois go far beyond simple operation of a website.

First, Plaintiffs insist, repeatedly, that "Perfect "download[s] the code necessary to run the VTO sessions onto Illinois consumers' devices while consumers are in Illinois." But, despite belaboring that point, Plaintiffs fail to follow through with any argument as to why the downloading of code—which, by all accounts, occurs whenever any user, anywhere, navigates to the VTO—amounts to a deliberate targeting or exploitation of the Illinois market. See *be2 LLC*, 642 F.3d at 559; see also *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (finding that a plaintiff cannot establish personal jurisdiction "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website"). It is also worth pointing out that the downloading of code is simply in the nature of *any* website, presumably even moreso in the case of an "interactive" website[3]—such that the allegation does not serve to set Perfect apart from mere website operators.

---

[3] See *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 640 F. App'x 943, 946 (Fed. Cir. Feb. 25, 2016) ("If the HTML contains references to images, CSS, JavaScript, or other resources needed by the pagelet, the browser will download them.*); Ethos Techs., Inc. v. RealNetworks, Inc.*, 462 F. Supp. 2d 131, 137 (D. Mass. 2006) ("The patents, therefore, appear to equate 'downloading' with the transfer of data. Such a definition, however, would encompass every instance of data retrieval on the Internet, including simply clicking on a hypertext link."); *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 839 (C.D. Cal. 2006) ("Using standard HTML, SoccerMANIA.com's webpage might, in fact, be in-line linking to the Pelé photo stored on, say, 'SoccerPASSION.com.' If that is the case, when the person seeking to visit SoccerMANIA.com's webpage uses his browser, the browser would (1) download SoccerMANIA.com's webpage, (2) parse through the various HTML commands of that webpage, (3) per HTML code, display the text 'We proudly show this photo,' (4) also per HTML code, follow an in-line link to the image stored on SoccerPASSION.com, (5) download the photo to the user's computer directly from SoccerPASSION.com, and (6) display the image in the browser below the text.").

To be sure, Plaintiffs do argue that there was commercial activity targeted at Illinois and its residents. However, Plaintiffs specifically cite *Shiseido's* sales and marketing strategy in Illinois, arguing: "Perfect also availed itself of the privilege of conducting business in Illinois by profiting from (through licensing fees) and assisting Shiseido with its marketing and sale of cosmetics (through running the VTOs) in Illinois." In ostensible support, Plaintiffs cite to two cases in which courts found that implementation of VTO on their websites was sufficient to confer personal jurisdiction over the defendant cosmetic companies. See *Kukovec v. Estee Lauder Companies, Inc.*, 2022 WL 16744196, at *4 (N.D. Ill. Nov. 7, 2022) (finding that Estee Lauder's "alleged capture of facial geometry through *its* website—relates to *its* sale of cosmetics and *it* purposefully avails *itself* of Illinois to sell cosmetics" (emphases added)); *Brown v. AS Beauty Grp. LLC*, 2024 WL 2319715, at *1 (N.D. Ill. May 22, 2024) (finding personal jurisdiction over company that "markets and sells beauty products through its website," which implemented VTO).

That those case are inapposite should be obvious. There is no question that a corporation that conducts a market strategy and makes sales in a state may be haled into court in there. In that context, the operation of a website is one among many contacts. Shiseido, the court would note, has not challenged personal jurisdiction.

To the extent that Plaintiffs are implying that a corporation's contacts with a certain state can be imputed to all other entities with which that corporation does business, they have cited no authority in support of that questionable assertion. Even "the jurisdictional contacts of a subsidiary corporation cannot be imputed to the

parent." *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 700 (N.D. Ill. 2008) (citing *Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943-944 (7th Cir. 2000)). The notion that an arm's-length transaction between two wholly unrelated corporations results in imputation of the corporations' jurisdictional contacts is antithetical to the concept and purpose of personal jurisdiction.

Plaintiffs offer a more nuanced suggestion, if briefly, as to the effect of a contractual relationship on the jurisdictional analysis. They assert that the Southern District, in *Moomaw*, 2024 WL 991531, recently held that "personal jurisdiction lies where a defendant should have foreseen that it would be interacting with Illinois residents through its online platform, even where it did not directly target Illinois, because it contracted with an entity that operated nationally, including in Illinois, and should have known that it would be interacting with at least some Illinois residents." While this is the extent of Plaintiffs' argument, the decision in *Moomaw* does merit a closer look.

In that case, Defendant GeoSnapShot was an Australian corporation that owned and operated a globally accessible website. *Id.* at *1. Event photographers could upload their photographs to the website, and, in turn, website users could find and purchase photographs. *Id.* at *1, *3. Thirty percent of the proceeds from those sales went to GeoSnapShot. *Id.* at *3 n.2.

In April 2019, GeoSnapShot contracted with Tough Mudder, an endurance event company, to allow photographers to attend and take photographs of participants in Tough Mudder events and upload them to the GeoSnapShot website. *Id*. at *1. Thereafter, the plaintiffs attended the "Tough Mudder Chicago Saturday" event held in Rockford, Illinois. *Id*. The plaintiffs subsequently used GeoSnapShot's Website to locate pictures of themselves participating in the event and purchase them. *Id*.

GeoSnapshot disputed personal jurisdiction, arguing, among other things, that its mere operation of a website accessible by Illinois residents did not amount to purposeful direction. *Id*. at *6. Specifically, it contended that it was "merely a technology vendor, and any contacts it has with Illinois [were] random, fortuitous, or attenuated: the result of a third party's conduct and/or a Website user's unilateral conduct." *Id*.

The Southern District court disagreed, pointing out that "GeoSnapShot was not merely involved in a one-off transaction with a third party who, without GeoSnapShot's knowledge, utilized GeoSnapShot's technology in Illinois for its own purposes. On the contrary, GeoSnapShot created and operated a self-hosted interactive website and allowed users, including Illinois users, to engage in commerce on that website." *Id*. at *7. "Further," the court opined, "GeoSnapShot stood 'ready and willing' to do business with Illinois residents and then knowingly did business with Illinois residents." *Id*. (quoting *NBA Properties*, 46 F.4th at 619-22).

On the latter point, the court cited to *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 399 (7th Cir. 2020), for the proposition that "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." The *Moomaw* court concluded that "there is ample evidence supporting a finding that GeoSnapShot reasonably should have foreseen that it would be licensing (and in some cases selling) photographs from its online photo platform to Illinois residents," given that it was hosting on its website photographs from an event called "Tough Mudder Chicago 2022 Saturday." *Id.* at *8. Thus, the court concluded:

> These contacts are not "random," "fortuitous," or "attenuated." They are the result of decisions made by GeoSnapShot, including: the decision to enter into a contract with Tough Mudder, an entity that GeoSnapShot knew held events nationally, including in Illinois; the decision to operate a website that hosts thousands of photographs from Illinois events; and the decision to license and/or sell photographs taken at Illinois events to Website users. As such, even assuming GeoSnapShot did not specifically direct advertising at Illinois and did not know each Website user's address, GeoSnapShot "reasonably could foresee" that it would be transacting business with Illinois residents. *Curry*, 949 F.3d at 399–400. See also *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) (specific personal jurisdiction present where website operator "structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them.[")]). In other words, GeoSnapShot purposely exploited the Illinois market in a way that it should have reasonably foreseen its technology being used by, and its photographs being licensed to, Illinois residents. If GeoSnapShot did not want to do business with Illinois residents, it could have removed Illinois events from its Website.

*Id.*

As set out above, Plaintiffs in the instant case assert that *Moomaw* stands for the proposition that "personal jurisdiction lies where a defendant should have foreseen that it would be interacting with Illinois residents through its online platform, even where it

17

did not directly target Illinois, because it contracted with an entity that operated

nationally, including in Illinois, and should have known that it would be interacting

with at least some Illinois residents." However, even assuming, arguendo, that *Moomaw*

was correctly decided, the court finds that it is distinguishable from this case on

multiple grounds.

Most obviously, Perfect neither conducted any sort of commercial transaction,

nor did "do business," with any person or entity in Illinois. The *Moomaw* court found

relevant that "GeoSnapShot created and operated a self-hosted interactive website and

allowed users, including Illinois users, to engage in commerce on that website." *Id.* at

*7. But the first component—the creation and operation of an interactive website—is an

insufficient contact as a matter of law under the Seventh Circuit precedent discussed

above. This suggests that the ability for Illinois users to "engage in commerce" on

GeoSnapShot's website was an indispensable basis for the Southern District's

conclusion. In this case, the extent of Perfect's own commercial activity was its licensing

agreement with Shiseido, an agreement that had nothing to do with Illinois whatsoever.

See *Purdue Research*, 338 F.3d at 786 (finding no personal jurisdiction where the

defendant "did not purposefully direct its commercial efforts toward Indiana.").

A similar distinction becomes apparent with respect to foreseeability. In a *general*

sense, GeoSnapShot could have foreseen that users from Illinois might use its website.

So too Perfect would be generally aware of the potential for Illinois users to utilize VTO

on Shiseido's websites. But this generalized foreseeability concerning visitors to a

website is plainly an insufficient contact; if not, then the operation of *any* website would

18

itself satisfy the jurisdictional analysis, a result, again, squarely rejected by the Seventh

Circuit. Indeed, even outside of the website context, it is well-settled that "foreseeability

alone has never been a sufficient benchmark for personal jurisdiction under the Due

Process Clause." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 881 (7th Cir. 2019)

(cleaned up) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Furthermore, "[t]he foreseeability that is critical to due process analysis is that *the*

*defendant's conduct and connection with the forum State* are such that he should reasonably

anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297

(emphasis added). While a website operator could foresee that some person in any

particular state may access the website, that does not mean said operator should

reasonably anticipate being haled into court in any such state.[4]

      Thus, the *Moomaw* court necessarily emphasized the *specific* reasons

GeoSnapShot would have foreseen that it was transacting with Illinois customers: (1) it

knew that Tough Mudder held events in Illinois; and (2) it hosted photographs on its

website from an event identified as "Tough Mudder Chicago 2022 Sunday."

---

    [4] The court would also point out that *Curry*, the case upon which the *Moomaw*
court largely based its foreseeability analysis, is also not an appropriate analog in this
case. As one court in the Northern District recently explained: "[T]he exercise of
personal jurisdiction in *Curry* and *uBID* was not based merely on the fact that the
defendants maintained websites that were accessible in the forum states. Rather, the
plaintiffs also alleged substantial litigation-related conduct in those states. For example,
in *Curry* the plaintiffs alleged that the defendant—in addition to advertising online—
listed Illinois as a "ship to" option on its website and sold its product to 767 Illinois
residents." *Schoeps v. Sompo Holdings, In*c., 2024 WL 2817361, at *11 (N.D. Ill. June 3,
2024).

Such specific knowledge is not present in this case. Even if the court assumes that Shiseido had a nationwide marketing strategy, and that Perfect was aware of that—facts that have not been alleged—this still falls well short of the scenario in *Moomaw*, in which GeoSnapShot knew for a fact that, as a result of its contractual relationship, Illinois residents would be coming to its website and making purchases. "Knowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law." *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (emphasis in original). Moreover, without Perfect having more specific reasons to believe it would be interacting with Illinois residents, Plaintiffs argument is more akin to that addressed above, that Shiseido's jurisdictional contacts must simply be imputed to Perfect as a result of their relationship. As already discussed, that argument is easily rejected.

In short, "GeoSnapShot stood 'ready and willing' to do business with Illinois residents and then knowingly did business with Illinois residents." *Moomaw*, 2024 WL 991531, at *7. Tough Mudder hosted an event in Illinois and GeoSnapShot sold photographs from that event on its website. Clearly, the intent was to do business with Illinois customers. GeoSnapShot thus purposefully directed its activities at Illinois residents, and had a connection with the state wholly unlike that of Perfect in this case. Perfect sold nothing except a license to Shiseido—a corporation incorporated in Delaware with its principal place of business in New York—and did nothing to indicate it was ready or willing to do business with anyone in Illinois.

20

Plaintiffs' final effort to cast Perfect as more that a mere website operator relates to Perfect's Privacy Policy and Terms of Service, both of which make explicit reference to BIPA. Based on those references, Plaintiffs contend that "Perfect licensed its VTO knowing that it would be used by Illinois consumers." Likewise, Plaintiffs maintain that Perfect's acknowledgement that lawsuits related to BIPA may pose risk to its operations amounts to a "clear affirmation[] that Perfect st[ands] ready and willing to do business with Illinois residents."

As Perfect points out in its Replies, Plaintiffs cite no authority in support of their suggestion that these references either establish or contribute to Perfect's jurisdictional contacts with Illinois. In fact, myriad courts have rejected precisely that argument. See, *e.g.*, *Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *5 (N.D. Cal. July 7, 2020) ("While these references [to California privacy laws] show that SayGames knew *Jelly Shift* might be purchased by California residents, they do not indicate that SayGames specifically aimed *Jelly Shift* at California residents."); *Will Co. v. Does 1-20*, 2022 WL 18878042 (W.D. Wash. Dec. 19, 2022) ("References to United States' laws in JuicyAds' terms of service agreement is not sufficient to show Defendants' intentional actions were expressly aimed at this forum."); *L-Nutra, Inc. v. Prevail Solutions, LLC*, 2021 WL 6103084, at *4 (C.D. Cal. Oct. 12, 2021) ("In the absence of evidence that Defendant's [product] or the content of its website was specifically targeted toward a California market, the waiver of [the California Code] in the website's terms of service merely reflects an awareness that California residents might visit Defendant's website," which is insufficient to establish the defendant targeted California consumers.).

This court is unaware of any Seventh Circuit case law addressing this topic. See

*Castelaz v. Estee Lauder Companies., Inc.*, 2024 WL 136872, at *5 (N.D. Ill. Jan. 10, 2024)

(observing the same). But, like the *Castelaz* court, this court finds the rationale expressed

in the above out-of-circuit cases compelling. The Seventh Circuit has made clear that

"[k]nowing about a potential for harm in a particular state is not the same as acting *in*

that state—and it takes the latter to permit personal jurisdiction under state law." *Ariel*

*Invs., LLC*, 881 F.3d at 522 (emphasis in original). Perfect's references to BIPA cannot be

read as doing any more that acknowledging the potential for harm in Illinois.

In concluding that Plaintiffs in this case have failed to meet their burden in

demonstrating that this court has personal jurisdiction over Perfect, the court notes that

its conclusion is in line with a number of courts who have reached the same conclusion

in similar cases. First among those cases is *Castelaz*, a case nearly identical to this one. In

that case, the plaintiffs brought a BIPA complaint based on the VTO provided on Estee

Lauder's website, and included Perfect as a defendant. *Id*. at *1.

The Northern District court granted Perfect's motion to dismiss for lack of

personal jurisdiction, rejecting all of the same arguments made by Plaintiffs in this case.

*Id*. at *4-6. The court observed that the cases cited by the plaintiffs "are inapposite

because, unlike here, the defendants, who operated interactive websites that were

accessible in Illinois, continuously and successfully targeted the Illinois market through

advertisements or sales." *Id*. *5. "Without some indication that Perfect itself targeted Illinois," the court concluded, "it cannot be subjected to personal jurisdiction here." *Id*.[5]

Similarly, in *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *1 (N.D. Ill. Jan. 26, 2022), the defendant developed and owned a mobile application that captured the unique contours and geometry of users' faces. As in this case, the plaintiff asserted that the defendant was subject to personal jurisdiction because the app was "available and used by Illinois residents." *Id*. at *3. The court rejected that argument, stating:

> The only connection between Wemagine and Illinois is Gutierrez. Gutierrez chose to download the Viola app. There was no directed marketing specific to Illinois, and the fact that Viola is used by Illinois residents does not, on its own, create a basis for personal jurisdiction over Wemagine. Put simply, there must be a stronger connection between Illinois and Wemagine to subject Wemagine to court proceedings in this district. This holding is in line with recent holdings in this circuit and district—those Courts that found personal jurisdiction were presented with a more significant connection to Illinois than Gutierrez has shown here.

*Id*. at *2. Indeed, like Perfect in this case, the *Gutierrez* court concluded that "there is no evidence that Wemagine purposefully directed any of its conduct toward Illinois, did any Illinois-specific shipping, marketing, or advertising, or sought out the Illinois market in any way." *Id*. at *3.

---

[5] Plaintiffs argue that *Castelaz* was wrongly decided. Specifically, they maintain that the *Castelaz* court erroneously accepted the allegation that VTO users affirmatively downloaded VTO on their devices, rather than Plaintiffs' current allegation that Perfect downloads the VTO. This distinction—who exactly is doing the downloading—is a central theme of Plaintiffs' Responses. Clearly, users select the VTO tool from a Shiseido website, and in turn, code is "automatically" downloaded to their device. Whether this is better characterized as users doing the downloading or Perfect doing the downloading, what Plaintiffs fail to explain is why that distinction matters at all for jurisdictional purposes.

Finally, in *Redd v. Amazon Web Servs., Inc.*, 673 F. Supp. 3d 943, 945 (N.D. Ill. 2023), the defendant, AWS—which actually was registered to do business in Illinois— marketed and sold a program called "Rekognition," an image-recognition technology, to businesses and other entities. Meanwhile, a third party, Wonolo, ran a mobile application that allowed users to search and apply for jobs. *Id*. Wonolo contracted with AWS to host its app data and retained AWS for its software services, including Rekognition. *Id*. at 945-46.

The Northern District court dismissed the suit on jurisdictional grounds, finding that AWS had not purposefully directed its activities at Illinois. *Id*. at 946. The court observed that "the only alleged link between AWS and Illinois runs through Wonolo," and pointed out that the requisite minimum contacts can only be established through a third party where the defendant itself targets the forum state via that third party. *Id*.

The parallels between the result in *Redd* and this case are clear. Addressing *Redd* only briefly in their Responses, Plaintiffs argues that AWS "merely provided a third party with its technology," unlike Perfect, which, it argues, "provides VTO to users in Illinois, including by downloading the VTO onto Illinois consumers' devices." But even when the premise that Perfect is an active participant in VTO sessions is indulged, it does not make up for the fact that Perfect's connections to Illinois flow inextricably through Shiseido and its websites, and Perfect never purposefully directed any activity toward Illinois.

24

In sum, Plaintiffs have failed to make a prima facie showing that Perfect purposefully directed any of its activities toward Illinois, a requirement for the assertion of personal jurisdiction. See *NBA Properties*, 46 F.4th at 621. Perfect has absolutely no physical presence in Illinois, did not direct any marketing or advertising at Illinois, see *Gutierrez*, 2022 WL 252704, at *2, and has otherwise done nothing to indicate an intent to do business in Illinois. *NBA Properties*, 46 F.4th at 619. While Perfect ostensibly operated a highly interactive portion of Shiseido's websites, which it could reasonably have expected to be used by Illinois residents, that does not establish the requisite minimum contacts as a matter of law. *be2 LLC*, 642 F.3d at 558; *Advanced Tactical*, 751 F.3d at 803. Thus, the only connection between Perfect and Illinois are the users who elected to utilize VTO. See *Gutierrez*, 2022 WL 252704, at *2; see also *NBA Properties*, 46 F.4th at 623-24.

Finally, Plaintiffs request that "[i]f the Court finds that Plaintiffs have not shown that the Court has personal jurisdiction over Perfect Parent, it should permit Plaintiffs to conduct limited jurisdictional discovery." District courts have discretion to authorize limited discovery into jurisdictional issues, see *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022), but the Seventh Circuit has stated that "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Reimer Express*, 230 F.3d at 946. The court finds that Plaintiffs have not made that showing and are therefore not entitled to jurisdictional discovery. See *Castelaz*, 2024 WL 136872, at *6 (reaching the same conclusion). To the extent that there are any factual ambiguities in the record, the court has already construed those in

25

favor of Plaintiffs. Moreover, while Plaintiffs assert that discovery of the contracts between Perfect and Shiseido may reveal some discrete connection to Illinois, "a district court does not abuse its discretion in denying additional discovery where the request was based on nothing more than mere speculation and would amount to a fishing expedition." *Helping Hand Caregivers, Ltd. v. Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018).

Accordingly, the court GRANTS Perfect California's Motion to Dismiss (#61) and Perfect Cayman's Motion to Dismiss (#77), on the grounds that Plaintiffs have failed to show that this court has personal jurisdiction over those Defendants.

IT IS THEREFORE ORDERED THAT:

(1) The Motion to Dismiss filed by Perfect Corp., a California Corporation, (#61) is GRANTED. Perfect Corp., a California Corporation, is terminated as a defendant in this case.

(2) The Motion to Dismiss filed by Perfect Corp., a Cayman Islands Corporation, (#77) is GRANTED. Perfect Corp., a Cayman Islands Corporation, is terminated as a defendant in this case.

(3) This case is administratively reopened and the matter is referred to the Magistrate Judge for further proceedings.

ENTERED this <u>15th</u> day of <u>October</u> , 2024.

<u>s/Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE
